EMMA ASHER, Appellee, v. CITY OF COUNCIL BLUFFS, IOWA, Appellant.

**Municipal corporations:** DEFECTIVE STREETS: NEGLIGENCE. A city is not liable merely because of defects or obstructions in its streets made reasonably necessary by the work of improving the same.

**Same:** NEGLIGENCE: EVIDENCE: SUBMISSION OF ISSUES. It is the duty of a city to maintain a portion of the street at the side, while the center was torn up for the purpose of laying street railway tracks, in as safe a condition for travel as was consistent with the work of improvement. In the instant case the evidence is held to warrant submission of defendant's negligence in permitting holes in the surface of the traveled portion of the street, into which plaintiff's horse stepped, causing her to be thrown from the buggy and injured, and also to warrant submission of plaintiff's contributory negligence.

*Appeal from Pottawattamie District Court.*—HON. E. B. WOODRUFF, Judge.

WEDNESDAY, APRIL 8, 1914.

ACTION for damages resulting from an accident upon defendant's street. Negligence is charged against the defendant in failing to maintain such street in safe condition for travel. There was a verdict for plaintiff, and the defendant appeals.—*Affirmed.*

*Tinley, Mitchell & Pryor* and *D. E. Stuart,* City Solicitor, for appellant.

*I. N. Flickinger, Clifford Powell* and *H. V. Battey,* for appellee.

EVANS, J.—The accident involved in this suit occurred at or near the intersection of Eighth street and Avenue C of the defendant's streets. Eighth street runs north and south, and at the time of the accident, and prior thereto, was occupied by a street railway track. The street was torn up in the course of improvement by the street railway company, which was then engaged in double tracking its line along this street. For the purpose of such improvement, the paving along the center line of the street was taken up for a width of sixteen feet. Within such zone the double tracks were laid upon ties whose ends extended about one foot in each direction beyond the line of the rail. The excavation along the center line, over which the rails and ties were hung, was eighteen inches deep. On each side of the excavation a strip of paving was left undisturbed of about ten feet wide. However, the strip along the west side was fully obstructed and occupied with building material and material resulting from the excavation. On the east side the ten-foot strip was kept open for the purpose of public travel. Avenue C extended west from Eighth street. It had no extension to the east thereof. The plaintiff and her husband, riding in a buggy drawn by one horse, came towards Eighth street from the west along Avenue C. They crossed Eighth street over some temporary bridging that had been laid thereon, and were in the act of turning south to pass along the ten-foot strip of paving on the east side when they observed at some distance a team coming toward them on the same strip. Thereupon the husband undertook to back his vehicle so as to enable the team to pass by. In this effort the horse stepped into a hole in the paving near the east rail. The horse became

frightened thereby, and the plaintiff's husband temporarily lost control of him, whereby the plaintiff was thrown out of the buggy and seriously injured.   The following statement from appellant's brief incorporates the salient facts concisely:

## Statement.

North Eighth street in the city of Council Bluffs runs north from Broadway, taking a due north and south course. Broadway is the principal east and west street of the city. West of Eighth street, and north of Broadway, the east and west streets are lettered as avenues, commencing with the first street north of Broadway known as Avenue A, and continuing on to and including O.   East of Eighth street, and north of Broadway, the streets running east and west, and substantially parallel with Broadway, are as follows:  Washington avenue, Mynster street, and Mill street.   The east and west streets on each side of Eighth street do not connect; that is, Washington avenue intersects Eighth street about one hundred feet north of Avenue A, Mynster street intersects Eighth street about one hundred feet north of Avenue B, and Mill street intersects Eighth street about one hundred feet north of Avenue C.   A short time before the date of the accident in question, to wit, April 27, 1911, the Omaha & Council Bluffs Street Railway Company commenced the construction of a double-track street railway line at the intersection of Broadway and Main streets, purposing to so construct a line for a distance of eight blocks.  About 2 o'clock on the afternoon of April 27, 1911, appellee, Emma Asher, in company with her husband, Daniel Asher, who was doing the driving, started for the main portion of Council Bluffs, leaving their home on the corner of Sixteenth street and Avenue O about 2 o'clock in the afternoon.   They drove east to Ninth street, which is a street one block west of Eighth street, and parallel with it; thence south on Ninth street to Avenue B, intending to turn east on Avenue B.   They observed, however, that Avenue B was blockaded, and travel along it cut off.   They observed the street railway in process of construction along Eighth street at Avenue B (Abstract, page 20, lines 16-19). The testimony of the plaintiff's husband shows that he drove up Avenue B to Ninth street, which he found blockaded, and that he turned north on Ninth street to Avenue C, and then

noticed a team coming out across Eighth street going west on Avenue C. He and the plaintiff were then between Eighth and Ninth streets going east on Avenue C. They continued going east on Avenue C until Eighth street was reached, and then noticed the temporary crossing of ties, and that the crossing was in pretty bad shape. The ties were laid between the tracks. The paving was torn out. They noticed that on the west side of Eighth street, and south of Avenue C, the material from the paving had been piled, obstructing the use of that side of the street (Abstract, 17). The west side of Eighth street south of Avenue C was blocked with stuff so completely that they could not use that side of the street. After they had driven across the temporary crossing, the plaintiff's husband looked up and saw a single buggy coming from Washington Avenue North on the east side of Eighth street. The plaintiff's husband tried to back the horse, but was unable to do so. He then got out of the buggy and backed the horse probably five feet until the left wheel of the buggy struck the curbstone, and the horse would back no farther. The brick paving had been taken out, leaving a sort of a saw edge. That when the plaintiff's husband could not back the horse any further, he pulled her forward, and to the left, and according to his testimony the horse caught her foot in the saw edge of the paving at the edge of the trench, and the horse got frightened and lunged straight across the tracks in the trench, throwing plaintiff out of the buggy (Abstract, page 18). The excavation for the rails was between sixteen and eighteen inches deep, and the trench was from twelve to fifteen feet wide (Abstract, page 19). Plaintiff's husband says that he does not know whether he noticed there were two street railway tracks being built in the street, but that he could see the tracks along there, and that he could not tell until he got up to where the tracks were laid, although he could have seen them had he looked. As he approached the crossing he saw the rails, and that there were two tracks the usual distance apart, and that the crossing was made of ordinary ties laid between the rails. He saw the crossing as he approached it, and it was in plain view (Abstract, 21). He saw the trench when he turned south, saw the width of the driveway, and that the bricks were taken up. When he got out of the buggy he observed the exact condition. He then turned the horse enough and so close to the edge of the

trench that he stepped in over the edge, and then the horse pulled back a little and made a lunge across the track.

The foregoing is subject to some slight corrections which may be noted later.

. The charge of negligence set forth in the petition is very broad, and not very definite.   The substance of the charge is that the defendant negligently failed to maintain this traveled strip on Eighth street in a reasonably safe condition for public travel, and that it failed to warn the plaintiff of its actual condition.

The principal proposition argued by the appellant is that it was entitled to a directed verdict, and that the trial court erred in failing to sustain its motion to that effect.   Its general contention is that the defects complained of were purely incidental to the work of improvement which was in progress thereon, and that such improvement was lawful and lawfully done, and that there was nothing which the city could have done consistently with the making of such improvement which would have rendered the street more safe than it was.

That the city was not liable for such tearing up of its streets as was reasonably necessary to the improvement in

1. MUNICIPAL COR- progress thereon is not seriously questioned.
PORATIONS : de-
fective streets:  *Jones v. City of Clinton,* 100 Iowa, 333;
negligence.       *Gilcrest Co. v. Des Moines,* 128 Iowa, 49; *Ste-*
*vens v. Gas & Electric Co.,* 132 Iowa, 601; *Garnetz v. City of Carroll,* 136 Iowa, 570; *Pace v. Webster City,* 138 Iowa, 107.

The consideration of the case, therefore, must proceed upon the theory that the city was not liable for mere defects or obstructions in the street which were reasonably necessary

2. SAME: negli-    to the work of improvement.   The fact re-
gence: evi-
dence: submis-   mains that it was the duty of the city to use
sion of issues.  reasonable diligence to maintain the traveled
strip along the east side in as safe condition as was consistent with the work of improvement.   The one defect which is pointed out is that at the western edge of the strip, and along

the east side of the rail, there were triangular holes extending to the ends of the ties, presenting what is called a ''zigzag'' edge to the paved strip. It was into one of these holes that the horse stepped. They had been there for a long time. It was a question for the jury whether they were reasonably necessary to the work of improvement, and especially whether they should reasonably have been permitted to remain so long. They presented a continuing danger to travel on the paved strip, and needed to be actively avoided. The rail presented an apparent line of demarcation and an apparent boundary between the paved strip and the open trench. As against this, it is urged that the accident happened in daylight, and that the actual condition of the traveled strip was apparent to the plaintiff and her husband, and were apparent to them before they crossed the intersection. Upon this record, however, all this was fair jury argument, and no more. For the purpose of the present discussion, we must assume the facts as most favorable to the appellee. The evidence would justify a finding that these defects were not observable to the plaintiff or her husband until they came upon the strip; that it was apparent that travel was passing that way; that the bridging across Eighth street consisted of loose ties, and commanded the close attention of the driver while passing over it; that the turn south into the ten-foot strip was necessarily short, and had to be made within the space of the ten feet; that this necessitated the turning of the horse in that direction before the buggy itself came within the zone; that it was while in such act of turning, and after the horse had proceeded a few feet only, that the coming of the other team was discovered; that the position into which the plaintiff and her husband were thus drawn was one from which they could not extricate themselves except by backing; that there was no extension of Avenue C toward the east from Eighth street; that the plaintiff was in a position where he could not go forward except by turning and proceeding along this ten-foot strip of paving; that the situation was one which

was liable to occur at any time to any traveler, and one that ought to have been foreseen by the authorities; that in such a situation the danger from the triangular holes was intensified; that the dangerous condition of the paved strip in the respect indicated was not rendered apparent to plaintiff and her husband until they were already in the trap, and were meeting the emergency which confronted them.

The question of contributory negligence of the plaintiff and her husband was submitted by the court to the jury by instruction against which no complaint is made, except that' it is claimed that they were guilty of contributory negligence as a matter of law. We reach the conclusion, however, that the defendant was not entitled to a directed verdict, either on the ground of contributory negligence of the plaintiff, or on the ground of absence of negligence on its own part.

Appellant has directed argument specifically against several of the instructions. We need not deal with these separately. The instructions complained of are consistent with our views above expressed. What we have already said, therefore, must be deemed as sufficient response to this part of the argument.

The judgment below is accordingly—*Affirmed.*

LADD, C. J., and WEAVER and PRESTON, JJ., concurring.